UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW SCLAFANI,

                                                        Civil No.

                      Plaintiff,

         vs.                                       **COMPLAINT**

FLYING FOOD GROUP, LLC, FLYING FOOD
INC., FLYING FOOD FARE, INC., and AIRLINE
SERVICE PROFESSIONALS LLC,                    **JURY TRIAL DEMANDED**

                         Defendants.

-------------------------------------------------------------X

       Plaintiff, ANDREW SCLAFANI, by and through his attorneys Kreindler & Kreindler LLP,

respectfully alleges against the defendants, FLYING FOOD GROUP, LLC, FLYING FOOD INC.,

FLYING FOOD FARE, INC., and AIRLINE SERVICE PROFESSIONALS LLC, and each of

them (hereinafter collectively "Flying Food Defendants") as follows:

<h3 align="center">JURISDICTION AND VENUE</h3>

       1.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332 in that the parties

are citizens of diverse states and the amount in controversy exceeds $75,000.

       2.     Venue is proper in this District under 28 U.S.C. § 1391(b) in that acts or omissions

complained of occurred in this District, and the Flying Food Defendants regularly conduct business

in this District and are otherwise subject to the Court's personal jurisdiction with respect to this

action.

<h3 align="center">PARTIES</h3>

       3.     At all times mentioned herein and on December 20, 2015, Plaintiff, Andrew

Sclafani was and is a citizen and resident of Michigan.

4.    At all times mentioned herein and on December 20, 2015, Plaintiff's principal residence was and is 13352 Edison, Southgate, Michigan 48195.

5.    At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC is a Delaware corporation with its principal place of business located at 212 N. Sangamon #1A, Chicago, IL 60607.

6.    At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC is and was registered to conduct business in New York State.

7.    At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC transacted and was and is doing business within the State of New York and within the Eastern District of New York and said business and its activities gave rise to these allegations.

8.    At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC was and is the parent company of Flying Food Inc.

9.    At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC was and is the parent company of Flying Food Fare, Inc.

10.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food Group, LLC was and is the parent company of Airline Service Professionals LLC.

11.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food, Inc. is a Delaware corporation with its principal place of business located at 212 N. Sangamon Suite #1A, Chicago, IL 60607.

12.   At all times mentioned herein and on December 20, 2015, Flying Food, Inc. was and is registered to conduct business in New York State.

13.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food, Inc. transacted and was and is doing business within the Eastern District of New York and the State of New York and said business and its activities gave rise to these allegations.

14.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food, Inc. was and is the parent company of Flying Food Group, LLC.

15.   At all times mentioned herein and on December 20, 2015 Defendant Flying Food, Inc. was and is the parent company of Flying Food Fare, Inc.

16.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food, Inc. was and is the parent company of Airline Service Professionals LLC.

17.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food Fare, Inc. is an Illinois corporation with its principal place of business located at 212 N. Sangamon Suite #1A, Chicago, Illinois 60607.

18.   At all times mentioned herein and on December 20, 2015, Flying Food Fare, Inc. conducts business by and through its subsidiary entities which are registered to do business in New York State.

19.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food Fare, Inc. transacted and was and is doing business within the Eastern District of New York and State of New York and said business and its activities gave rise to these allegations.

20.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food Fare, Inc. was and is the parent company of Flying Food Group, LLC.

21.   At all times mentioned herein and on December 20, 2015 Defendant Flying Food Fare, Inc. was and is the parent company of Flying Food Inc.

22.   At all times mentioned herein and on December 20, 2015, Defendant Flying Food, Inc. was and is the parent company of Airline Service Professionals LLC.

23.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals is an Illinois corporation with its principal place of business located at 212 N. Sangamon Suite #1A, Chicago, Illinois 60607.

24.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals conducts business by and through its subsidiary entities which are registered to do business in New York State.

25.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals transacted and was and is doing business within the Eastern District of New York and State of New York and said business and its activities gave rise to these allegations.

26.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals LLC was and is the parent company of Flying Food Group, LLC.

27.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals LLC was and is the parent company of Flying Food Inc.

28.   At all times mentioned herein and on December 20, 2015, Defendant Airline Service Professionals LLC was and is the parent company of Flying Food Fare, Inc.

## GENERAL ALLEGATIONS

29.   At all times mentioned herein, including on December 20, 2015, JetBlue Airways Corporation (hereinafter "JetBlue") was and is a common carrier in the business of operating commercial airliners throughout the United States of America and internationally.

30.   At all times material herein, including on December 20, 2015, JetBlue was and is a Delaware corporation with its principal place of business located at 27-01 Queens Plaza North, Long Island City, New York, 11101.

4

31.   At all times mentioned herein, including on December 20, 2015, JetBlue leased property at Terminal 5 at John F. Kennedy International Airport (hereinafter "JFK").

32.   At all times mentioned herein, including on December 20, 2015, JetBlue was and is registered to do business in New York.

33.   At all times mentioned herein, including on December 20, 2015, JetBlue transacted and was and is doing business within the Eastern District of New York and repeatedly solicited business within the Eastern District, and provided services with the reasonable expectation that such services would be performed within the Eastern District of New York.

34.   At all times mentioned herein, including on December 20, 2015, JetBlue operated commercial aircraft flights out of JFK Airport, including Terminal 5.

35.   At all times mentioned herein, including on December 20, 2015, Plaintiff, Captain Andrew Sclafani (hereinafter "Captain Sclafani"), was and is a JetBlue employee pilot with 29 years of commercial piloting experience, including 15 years of continuous employment to present as a pilot with JetBlue.

36.   At all times mentioned herein, including on December 20, 2015, the Flying Food Defendants, and each of them, were and are for-profit corporations and entities in the business of supplying food, beverages, and supplies to airline carriers, including JetBlue, in, amongst other jurisdictions and venues, in New York State and throughout the United States.

37.   At all times mentioned herein, including on December 20, 2015, the Flying Food Defendants, and each of them, carried out their respective business operations through agents, servants, representatives and employees.

38.   At all times mentioned herein and on December 20, 2015, Defendants, and each of them, provided and were in the process of providing provisioning supplies by their agents,

servants, representatives and employees, including but not limited to, Mr. Andre Antonio and Mr. Alfredo Altnor, at JFK Airport to JetBlue and in particular Flight #621.

39.    At all times mention herein and on December 20, 2016, Captain Sclafani was the assigned pilot in command of the JetBlue scheduled Flight #621.

40.    At all times mentioned herein and on December 20, 2015, Captain Sclafani was scheduled to pilot the JetBlue Airbus A321, Flight Number 621 (hereinafter "the subject aircraft") from John F. Kennedy International Airport (hereinafter "JFK") in New York, New York to Lynden Pindling International Airport in Nassau, Bahamas.

41.    At all times mentioned herein and on December 20, 2015, at the time and place of the subject incident, the Flying Food Defendants, and each of them, by their agents, servants, representatives and employees, including but not limited to Andre Antonio and Alfredo Altnor, were negligent and careless in the performance of their duties and responsibilities in the operation and control of the Defendants' provisioning motor vehicle (truck) and its appurtenant parts.

42.    At all times mentioned herein and on December 20, 2015, the Defendants, and each of them, failed to perform their obligations and functions in a safe and appropriate manner and such carelessness and negligence caused Captain Sclafani to suffer life threatening permanent and disabling injuries from the negligently created bridgeway/gangway/platform intended to connect and provide passage between the JetBlue aircraft cabin and Defendants' provisioning truck.

43.    Upon information and belief, at all times mentioned herein, including on December 20, 2015, the Flying Food Defendants, and each of them, provided provisioning and catering services to airline carriers at JFK, including JetBlue and its aircraft at Terminal 5, most particularly Flight #621.

44.  Upon information and belief, at all times mentioned herein and on December 20, 2015, while the crew was preparing the aircraft and cabin before takeoff but prior to the aircraft being secured for takeoff, the JetBlue aircraft, Flight #621, was located at JFK Terminal 5, Gate 27.

45.  Upon information and belief, at all times mentioned herein and on December 20, 2015, at or about 6:00AM the Flying Food Defendants' (and each of them) provisioning truck, PANYA license plate number A16696, (hereinafter "subject truck") by their respective agents, servants, representatives and employees, including Messrs. Antonio and Altnor, were providing catering services to the aircraft as well as provisions including but not limited to food, beverages, and supplies.

46.  Upon information and belief, at all times mentioned herein and on December 20, 2015, the subject truck was operated by Flying Food Defendants and each of their respective agents, servants, representatives, and employees.

47.  At all times mentioned herein, including on December 20, 2015, JetBlue had issued and had in effect a "Provisioning Guide" for its employees as well as those servicing its aircraft, including said Defendants (and each of them), which set procedures, protocol and standards for the servicing and provisioning of JetBlue aircrafts, including the aircraft Flight #621, the subject of this complaint.

48.  At all times mentioned herein, including on December 20, 2015, JetBlue provided actual notice of these standards through "Provisioning Safety Alerts" that were provided to its employees and those servicing its aircraft, including Defendants herein, and each of them.

49.  At all times mentioned herein, including on December 20, 2015, the JetBlue provisioning standards established the procedures and guidelines to be followed by those servicing

7

its aircraft (including the subject aircraft herein) and in particular the Flying Food Defendants and each of their respective agents, servants, representatives and employees, which guidelines included but were not limited to the methods to be employed as well as the positioning of Defendants' provisioning trucks servicing aircraft.

50.    Upon information and belief, at all times mentioned herein and on December 20, 2015, The Port Authority of New York and New Jersey issued, promulgated and had in full force and effect directions, guidelines and regulations governing the use and operation of provisioning and service vehicles, including and encompassing the subject Defendants' truck operated by the subject Defendants' respective agents, servants, representatives, and employees, which was servicing the subject JetBlue Flight #621.

51.    At all times mentioned herein, including on December 20, 2015, The Port Authority promulgated rules, regulations, standards and operational procedures required to be strictly complied with and followed by all operators of motorized vehicles, (including defendants' and each of them named herein) in the servicing of aircraft (including JetBlue aircraft and the subject commercial Flight #621 airline herein) regulating their operation on airport property, especially at and about loading areas, gates, taxiways, runways, etc., the subject of this complaint.

52.    At all times mentioned herein, including on December 20, 2015, The Port Authority provided actual notice of these standards, rules and regulations  governing operation of motor vehicles, including provisioning trucks, their apparatus and appurtenant parts, providing supplies and services to aircraft and aircraft operators and owners and that said rules, regulations, standards and procedures were provided to and required to be known by Defendants, and each of their employees, agents, servants and/or representatives, and in particular those servicing aircraft (specifically the subject JetBlue Flight #621 aircraft) herein.

53.   At all times mentioned herein, including on December 20, 2015 the Port Authority's standards, rules and regulations governing operation of motor vehicles in the Air Operations Areas (AOA), mandated that all vehicles found in the Air Operations Areas, which included the subject area where the subject Flight #621 JetBlue aircraft was located and was being serviced by the Flying Food Defendants, and each of them, at the time of the incident complained of, failed to follow and obey said standards, rules and regulations.

54.   At all times mentioned herein and on December 20, 2015, the subject provisioning vehicle of the Defendants, and each of them, was designated as either a Type 1, 2, 3, 4, or 5 AOA vehicle in accordance with The Port Authority of New Jersey Airport Rules and Regulations, Appendix B, Sections 1.2.1; 1.2.2; 1.2.3; 1.2.4; and/or 1.2.5.

55.   At all times mentioned herein, including on December 20, 2015, this accident suffered by Captain Sclafani was caused and created by the negligence, carelessness and failures of the Defendants (and each of them) in the use, operation and control of the subject provisioning truck, a motorized vehicle.

56.   At all times mentioned herein and on December 20, 2015, at the time of this incident, the Defendants' (and each of them) subject provisioning truck was and is a motor vehicle capable and allowed to be operated on public roadways outside of airport premises as well as upon airport premises.

57.   At all times mentioned herein and on December 20, 2015, at the time of this incident, the Defendants' (and each of them) subject provisioning truck was a motor vehicle for use only upon airport premises.

58.   At all times mentioned herein, including on December 20, 2015, the subject provisioning truck was equipped with a hydraulic lift or other similar equipment and apparatus

9

(scissor lift) enabling the cargo box of said truck to be lifted and elevated so as to provide, amongst other things, provisions and servicing, including but not limited to food and beverages for consumption aboard the subject aircraft.

59. At all times mentioned herein and on December 20, 2015 the cargo box (also known and/or referred to as a "terminal pod") was lifted from the subject Defendants' truck's platform to a height intended to be accessible to the subject aircraft forward cabin door.

60. At all times mentioned herein and on December 20, 2015, the Defendants' (and each of them) provisioning truck was intended to be equipped with a bridgeway/gangway/ platform (also known as and referred to as a "truck platform") which was intended upon the box car being elevated, to extend towards the aircraft cabin door thereby creating the means by which Defendants' (and each of them) agents, servants, employees and representatives would have ingress and egress to and from the aircraft into the cargo box and vice versa.

61. At all times mentioned herein and on December 20, 2015, the Defendants' (and each of them) provisioning truck was intended to be equipped with a bridgeway/gangway/ platform (also known as and referred to as a "truck platform") which was intended upon the box car being elevated, to extend towards the aircraft cabin door thereby creating the means by which the flight crew including pilots and Captain Sclafani, as well as flight attendants, would have ingress and egress to and from the aircraft into the cargo box and vice versa.

62. The bridgeway/gangway/platform device allowed for transfer of food, beverages, and supplies including servicing carts to and from the aircraft through the cabin door(s) via the bridgeway/gangway/platform provided, operated, assembled and maintained by the Flying Food Defendants, and each of them, their agents, servants, representatives and employees.

63.     At all times mentioned herein and on December 20, 2015, the truck, cargo box, bridgeway/gangway/platform and its parts and appurtenances were in the custody and control as well as the property of the Flying Food Defendants (and each of them).

64.     Upon information and belief, at all times mentioned herein, and on December 20, 2015, at and about 6:00AM the Defendants' (and each of them) provisioning truck had positioned itself in the vicinity and location of the subject aircraft's cabin door, intending to provide and allow for ingress and egress between the aircraft cabin and the truck's cargo box.

65.     At all times mentioned herein and on December 20, 2015, the Flying Food Defendants (and each of them) had authority to access the subject JetBlue aircraft in order to provide provisions amongst other responsibilities.

66.     At all times mentioned herein and on December 20, 2015, JetBlue's assigned personnel were permitted to access the cargo box from the aircraft and its cabin.

67.     At all times mentioned herein and on December 20, 2015, JetBlue's assigned flight attendants were permitted to access the cargo box from the aircraft and its cabin.

68.     At all times mentioned herein and on December 20, 2015, JetBlue's assigned cockpit crew, including Captain Sclafani were permitted to access the cargo box from the aircraft and its cabin.

69.     At all times mentioned herein and on December 20, 2015, it was established custom and practice for aircraft crew, including flight attendants and cockpit crew (including Captain and First Officer) to enter and exit the elevated cargo box from the aircraft cabin door.

70.     At all times mentioned herein and on December 20, 2015, Captain Sclafani entered the subject box truck/cargo box from the aircraft's forward cabin door employing the bridgeway/gangway/platform erected and placed by the Defendants (and each of them) between

the aircraft and the elevated cargo box for amongst other purposes, access and supplying provisions.

71.   Upon information and belief, at all times mentioned herein and on December 20, 2015, at or about 6:00AM, Captain Sclafani entered the subject truck's elevated cargo box intending to re-enter the aircraft through the forward cabin doorway via the bridgeway/gangway/ platform created, erected, positioned, and assembled by the Flying Food Defendants and each of them.

72.   Upon information and belief, at all times mentioned herein and on December 20, 2015, at or about 6:00AM, while Captain Sclafani was employing and using the bridgeway/gangway/platform created, erected, assembled and installed by Defendants, and each of them, Captain Sclafani while walking on the erected bridgeway/gangway/platform to re-enter the aircraft cabin from the cargo box, the Defendants' bridgeway/gangway/platform and its appurtenant parts collapsed, gave way, and failed to operate properly causing Captain Sclafani to fall from the Defendants' gangway/bridgeway/platform to the tarmac and ground below and suffer severe life altering, permanent disabling traumatic physical, emotional and psychological injuries.

73.   At all times mentioned herein and on December 20, 2015, at or about 6:00AM, Captain Sclafani as a result of this fall was rendered unconscious for a period of time, all as a result of the failures of Defendants (and each of them).

74.   At all times mentioned herein and on December 20, 2015, at or about 6:00AM, Captain Sclafani as a result of the injuries he sustained due to this fall from the bridgeway/gangway/platform, was attended to by emergency medical services at the location where he lay on the tarmac/ground, and was thereafter removed by ambulance directly to Jamaica Hospital.

## AS AND FOR A FIRST CAUSE OF ACTION FOR PERSONAL INJURY
## DAMAGES AGAINST THE FLYING FOOD DEFENDANTS

75.     Plaintiffs repeat and reallege each and every allegation set forth above within paragraphs 1 through 74 of this Complaint with the same full force and effect as if each were more fully set forth herein at length.

76.     This action arises out of the serious traumatic, life altering catastrophic injuries suffered by Captain Sclafani as a result of the subject December 20, 2015 incident caused and created by the negligence and carelessness of the Flying Food Defendants (and each of them).

77.     At all relevant times mentioned herein and on December 20, 2015, Captain Sclafani's injuries were directly and proximately caused by the negligence, carelessness, failures, wanton and willful reckless disregard and neglect by the Flying Food Defendants, and each of them respectively, by their agents, servants, workers, representatives and/or employees in that the Flying Food Defendants, and each of them, failed: to follow and employ established guidelines for the purposes of providing provisioning services to the subject JetBlue aircraft upon which Captain Sclafani was scheduled to pilot on the accident date; in that the Flying Food Defendants, and each of them, failed to maintain the subject provisioning truck and its appurtenant parts, including but not limited to its cargo box and bridgeway/gangway/truck platform and appurtenant parts in proper operating condition;  in that the Flying Food Defendants, their agents, servants, representatives and employees, and each of them, failed to operate, drive, and position the subject truck pursuant to the existing rules, regulations and mandates, as required in relation to the subject aircraft so as to be properly located in relationship to the subject JetBlue aircraft and its cabin door, and in doing so failed to follow protocol, practice, procedure, and established guidelines resulting in the incident and the injuries sustained by  plaintiff Captain Sclafani; in that the Flying Food Defendants, and each of them, failed to properly and/or adequately train the provisioning truck driver, operators,

and workmen assigned thereto in the proper and required positioning of the truck and its bridgeway/gangway/platform and appurtenant parts in order to safely service the aircraft; in that the Flying Food Defendants, and each of them, failed to hire competent employees, servants, contractors, subcontractors, and/or agents to properly operate and perform the duties then and there required including the operation of the subject provisioning vehicle and its apparatus; in that the Flying Food Defendants, and each of them, failed to position the elevated cargo box and bridgeway/gangway/ platform in proper position;  in that the Flying Food Defendants, and each of them, failed to abide by and follow the established rules and regulations then and there existing in the operation of the subject provisioning truck and its appurtenant parts; negligently and carelessly entrusted the use and operation of their subject provisioning truck to agents, servants, representatives and employees who were unskilled and negligently trained in its use and operation; in that the Flying Food Defendants, and each of them, failed to maintain the subject provisioning truck and its appurtenant parts and mechanisms in proper operating order; in that the Flying Food Defendants, and each of them, failed to take the proper precautions to prevent the subject provisioning truck from moving during the servicing of the aircraft;  in that the Flying Food Defendants, and each of them, by their agents, servants, representatives and employees, did not properly keep their foot on the brake to prevent the subject truck from moving during the use and positioning of the bridgeway/gangway/platform and its appurtenant parts;  in that the Flying Food Defendants, and each of them, failed to properly place the chocks in proper position in respect to its tires and wheels so as to prevent the subject truck from moving or rolling so as to avoid causing and creating a known dangerous and hazardous condition;  in that the Flying Food Defendants, and each of them, failed to assemble and align the bridgeway/gangway/platform and its appurtenant parts, including but not limited to its side rails and connecting plates in a safe and

secure manner; in that the Defendants created an unsafe and hazardous condition causing and creating the failure of its bridgeway/gangway/platform and appurtenant parts, including its bridgeplate(s) causing Captain Sclafani to fall to the ground/tarmac below; in that the Flying Food Defendants, and each of them, failed to maintain the subject provisioning truck/vehicle and its mechanisms and appurtenant parts in a safe and/or operable condition and permitted the subject truck and its bridgeway/gangway/platform to be operated with known, and what reasonable observation and inspection would and should have revealed, to be a dangerous, defective, and unsafe condition; in that the Flying Food Defendants, and each of them, failed to raise the cargo box to the designated and/or required height and/or position to allow proper entry into the aircraft through its cabin door; in that the Flying Food Defendants, and each of them, failed to properly hoist the cargo box of the Flying Food Defendants' subject truck into the proper and required position so as to allow safe and secure access and passage between the subject truck's elevated cargo box and the aircraft at or about the forward cabin door; in that the Flying Food Defendants, and each of them, failed to deploy the bridgeway/gangway/platform properly, safely, and pursuant to established and required practice, procedure and protocol so as to establish safe passageway between the aircraft and the subject truck's elevated cargo box; in that the Flying Food Defendants, and each of them failed to put, place, or construct the bridgeway/gangway/platform in proper position; in that the Flying Food Defendants, and each of them, put, placed, or constructed the bridgeway/gangway/platform at a distance that was unsafe and too far from the aircraft cabin door thereby creating a dangerous condition which resulted in the collapse of said bridgeway/gangway/platform and bridgeplate(s) and appurtenant parts causing Captain Sclafani to fall to the ground/asphalt/tarmac below; in that the Flying Food Defendants, and each of them, failed to inspect, establish, provide, secure, and employ a proper bridgeway/gangway/platform and

its appurtenant parts including but not limited to the bridgeplate(s) so as to safely establish the intended passageway between the aircraft and the provisioning truck's elevated cargo box so as to provide safe entry and exit from the aircraft into the subject truck's cargo box and vice versa; in failing to provide safe passage between the aircraft and cargo box by erecting and placing into use a dangerous instrumentality which failed to operate as intended resulting in Captain Sclafani falling from the bridgeway/gangway/platform to the ground/asphalt/tarmac below; in that the Flying Food Defendants, and each of them, negligently, recklessly and carelessly permitted and allowed the bridgeway/gangway/platform to remain in a dangerous defective, hazardous, and unsafe condition; in that the subject bridgeway/gangway/platform was not reasonably fit for the purposes intended and generally dangerous to persons and workers intending and in fact using said passageway (gangway/bridgeway/platform); in that the Flying Food Defendants, and each of them, failed to take proper means and precautions to protect workers and persons, including Captain Sclafani when standing upon, walking on, and/or otherwise accessing the bridgeway/gangway/platform; in failing to protect those using and/or reasonably known individuals anticipated to use this bridgeway/gangway/platform, including Plaintiff, flight crew and flight attendants, in that the Flying Food Defendants, and each of them, failed to safely, properly, in conformity with established practice, procedure, and protocol deploy, place, install and/or secure the metal bridge plate(s) between the aircraft's forward cabin doorway and the Flying Food Defendants' subject provisioning truck's bridgeway/gangway/ truck platform; in that the Flying Food Defendants, and each of them, negligently, recklessly, and carelessly failed to place and secure the metal bridge plate where required and intended; in that the Flying Food Defendants, and each of them, failed to properly position the bridge plate causing the bridgeway/gangway/platform between the aircraft cabin door and the subject truck's elevated

cargo box to move, shimmy, or otherwise fail to be in and/or remain in proper position thereby

creating a dangerous condition which caused Captain Sclafani to fall to the ground/asphalt/tarmac

below;    in that the Flying Food Defendants, and each of them, failed to keep the

bridgeway/gangway/platform and its appurtenant parts, including the bridge plate(s), in proper and

safe operating condition;  in that the Flying Food Defendants, and each of them, failed to properly

maintain the bridgeway/gangway and its appurtenant parts, including the bridge plate(s), in the

condition intended; in failing to maintain the bridgeway/gangway, plates and appurtenant parts in

proper operating condition and causing them to be and become defective; in that the Flying Food

Defendants, and each of them, failed to maintain the bridge plate(s) in proper operating condition

and allowed said bridge plate(s) to fall into disrepair causing it to become unsteady, unsafe and

move out of position as they failed to be slip resistant or were otherwise worn and in disrepair and

not fit for the purposes intended; in failing to place said bridge plate(s) in proper position thereby

causing and creating a danger and hazard resulting in Captain Sclafani's fall;  in failing to fix and

secure said bridge plate(s) by means of pins, flanges, anchorage points, or similar safety devices

to prevent slipping or movement of the plate(s) between the bridgeway, gangway/truck platform

and the aircraft cabin door causing and creating a dangerous condition; failed to secure the bridge

plate(s) across the gap between the bridge/bridgeway/gangway/truck platform, which

space/gap/distance between the aircraft cabin door and the bridgeway/gangway/truck platform was

negligently and carelessly created and in violation of and contrary to the required rules, regulations

and protocols then and there existing so as to exceed the allowed distance creating a space through

which someone could fall through, and in particular Captain Sclafani in this instance; in that the

Flying Food Defendants, and each of them, dangerously, carelessly, and recklessly failed to deploy

and/or place the side rails on the bridgeway/gangway/platform in their proper position and/or said

guardrails were broken, in disrepair and unfit for the purposes intended;  in that the Flying Food

Defendants, and each of them, failed to deploy, install, place and secure those safety devices and

appurtenant parts including, but not limited to the subject provisioning truck's

gangway/bridgeway/platform's side rails, so as to provide proper safety and protection for those

using and reasonably expected to use the bridgeway/gangway/platform to access the subject

truck's elevated cargo box, including Captain Sclafani, and in turn access the aircraft through the

cabin doorway from the subject truck's elevated cargo box via the gangway/bridgeway/platform;

in that the Flying Food Defendants, and each of them, dangerously and recklessly failed to fully

extend the guardrails so as to protect workers or persons, including Captain Sclafani, from falling

from the bridgeway/gangway/platform to the tarmac below;  in that the Flying Food Defendants,

and each of them, failed to provide safe ingress and egress from the aircraft to the subject truck's

elevated box truck compartment and vice versa; Defendants, and each of them, failed in that they

allowed the use and erection of an unsafe and dangerous condition resulting in the

bridgeway/gangway/ platform and parts thereof to collapse and give way causing Captain Sclafani

to fall to the ground/tarmac/asphalt below and suffer severe life threatening and permanent

disabling injuries;  in that the Flying Food Defendants, their agents, servants, and/or employees

knew or reasonably should have known that JetBlue personnel, including Captain Sclafani, were

and would be employing the bridgeway/gangway/platform and its appurtenant parts to enter from

the aircraft into the subject truck's elevated cargo box and vice versa; in that the Defendants, and

each of them, constructed the bridgeway/gangway/platform hastily, too quickly, or in a hurried

manner and did not secure all the parts properly, creating the dangerous condition and collapse of

the bridgeway/gangway/platform, which caused Captain Sclafani to fall to the tarmac below; in

that Flying Food Defendants, and each of them, failed to follow, perform and institute the proper

methodology, protocol, rules and regulations and safety measures governing the Flying Food Defendants' servicing of the subject aircraft and in failing to do so endangered all those employing and using the subject truck's bridgeway/gangway/platform and, most particularly, Captain Sclafani; and in all other respects Flying Food Defendants, and each of them, were careless and negligent and with notice aforethought acted with reckless, willful and wanton disregard for human life, and most particularly that of Captain Sclafani causing Captain Sclafani's fall and multitude of injuries he sustained as a result thereof.

78.   The Flying Food Defendants, and each of them, had both actual and constructive notice of the dangers and disrepairs, inherent and obvious, and failed to follow protocol and safety rules and regulations and knowingly created the hazardous and dangerous conditions causing Captain Sclafani's fall and resultant injuries.

79.   That as a direct and proximate result of the Flying Food Defendants', and each of their, negligence, carelessness, recklessness, and willful and wanton disregard for human life on December 20, 2015, Plaintiff Captain Sclafani was rendered sick, sore, lame and disabled and so remains; was severely, seriously, permanently, and otherwise injured; suffered and sustained serious injuries, including but not necessarily limited to Traumatic Brain Injury, permanent physical, cognitive and psychological injuries, multiple skull fractures, right frontal lobe hemorrhagic contusion, left frontal and temporal lobe contusions, subarachnoid/intracranial hemorrhage with associated neurological and physical injuries, altered mental status, cognitive impairment, encephalomalacia of the right interior frontal lobe, loss of hearing and tinnitus, loss of taste and smell, left facial paralysis, left dental sensitivity, inability to close his left eye accompanied by dryness and tearing, headaches, vertigo, poor balance, decreased coordination, anterograde and retrograde post traumatic amnesia, confusion, disorganization, hyperverbosity,

anger, irritability, anxiety, and post-traumatic stress disorder, amongst others, requiring lengthy hospitalization, surgery and continuing lifetime medical care as well as multiple areas of rehabilitation and physical therapy and will continue to incur future medical and related expenses for the remainder of his life.

80.    That by reason of all of the foregoing, and the negligence, carelessness, recklessness, and willful and wanton disregard for human life by the Flying Food Defendants, and each of them, as aforesaid, Plaintiff, Captain Sclafani, has and will forever by deprived of continuing his profession as a commercial airline pilot or for that matter ever piloting any aircraft or pursuing his life-long profession and career, or any other similar profession, or potentially be rendered unemployable, thereby resulting in substantial, if not total loss of income and enjoyment of life.

81.    At all times mentioned herein, including December 20, 2015, that as a result of the Flying Food Defendants, and each of their negligence, carelessness, wanton and willful disregard for the life of Captain Sclafani, he has suffered life altering serious and severe disabling injuries due to the subject incident of December 20, 2015 and is entitled as a matter of law to compensatory damages, as well as exemplary and punitive damages for the injuries he sustained.

82.    By reason of the foregoing, Plaintiff Captain Sclafani suffered a serious physical injury, as defined by §5102(d) et seq. of the Insurance Law of the State of New York, and as a result, Plaintiff Captain Sclafani is entitled to recover for non-economic loss, and for economic losses not included within the definition of "basic economic loss," as set forth in 5102(a), et seq. of the Insurance Law of the State of New York.

83.   The Plaintiff, Captain Sclafani, has sustained serious injury and economic loss greater than basic economic loss so as to satisfy the exceptions of §5104 of the Insurance Law of the State of New York.

84.   This action falls within one or more of the exceptions set forth in C.P.L.R. §1602.

85.   By reason of the foregoing, Plaintiff Captain Sclafani is entitled to all economic and non-economic damages available under applicable law, as well as exemplary and punitive damages, all of which exceed the jurisdictional minimums of this court.

WHEREFORE, Plaintiff Captain Andrew Sclafani demands judgment against the Flying Food Defendants, same being FLYING FOOD GROUP, LLC, FLYING FOOD INC., FLYING FOOD FARE, INC., and AIRLINE SERVICE PROFESSIONALS LLC, and each of them, on all causes of action for such compensatory and punitive damages in an amount permitted by applicable law to be determined at trial plus interest, costs, attorney's fees and such other and further relief as the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 23, 2016

KREINDLER & KREINDLER LLP

David C. Cook (DC-2510)
Justin T. Green (JG-0318)
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, NY 10017-5590
(212) 687-8181
(212) 972-9432 (Fax)
dcook@kreindler.com
jgreen@kreindler.com
*Attorneys for Plaintiff*

83.   The Plaintiff, Captain Sclafani, has sustained serious injury and economic loss greater than basic economic loss so as to satisfy the exceptions of §5104 of the Insurance Law of the State of New York.

84.   This action falls within one or more of the exceptions set forth in C.P.L.R. §1602.

85.   By reason of the foregoing, Plaintiff Captain Sclafani is entitled to all economic and non-economic damages available under applicable law, as well as exemplary and punitive damages, all of which exceed the jurisdictional minimums of this court.

WHEREFORE, Plaintiff Captain Andrew Sclafani demands judgment against the Flying Food Defendants, same being FLYING FOOD GROUP, LLC, FLYING FOOD INC., FLYING FOOD FARE, INC., and AIRLINE SERVICE PROFESSIONALS LLC, and each of them, on all causes of action for such compensatory and punitive damages in an amount permitted by applicable law to be determined at trial plus interest, costs, attorney's fees and such other and further relief as the Court finds just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 24, 2016                          KREINDLER & KREINDLER LLP


                                              David C. Cook (DC-2510)
                                              Justin T. Green (JG-0318)
                                              KREINDLER & KREINDLER LLP
                                              750 Third Avenue
                                              New York, NY  10017-5590
                                              (212) 687-8181
                                              (212) 972-9432 (Fax)
                                              dcook@kreindler.com
                                              jgreen@kreindler.com
                                              *Attorneys for Plaintiff*